UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CORAL CAPITAL SOLUTIONS LLC,<br><br>                        Plaintiff,<br><br>-against-<br><br>DISRUPT SOCIAL, LLC and EVAN HART BLOOMBERG,<br><br>                        Defendants. | 24-cv-3940 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

    Evan Hart Bloomberg is the sole member of Disrupt Social, LLC, which provides marketing services to other companies. To get invoices paid faster, Disrupt Social entered into a factoring agreement with Coral Capital Solutions LLC, under which Coral Capital agreed to buy certain invoices from Disrupt Social, which Disrupt Social's customers were then supposed to pay to Coral Capital. In 2024, Coral Capital bought over $1,500,000 in invoices that Disrupt Social had purportedly issued to CBS Interactive. After Coral Capital received no payment for the invoices and defendants failed to pay the factoring fees, Coral Capital discovered that Disrupt Social hadn't issued a single invoice to CBS Interactive in 2024. Coral Capital sues Disrupt Social and Bloomberg (who acted as guarantor) for breach of contract, fraud in the inducement, conversion, and the imposition of a constructive trust. Defendants move to dismiss the second amended complaint, and Coral Capital moves for summary judgment. For the following reasons, both motions are GRANTED IN PART and DENIED IN PART.

## BACKGROUND

    Coral Capital is in the factoring business. Dkt. 55 ¶ 17. That means that it "provid[es] financing to its clients through the purchase of accounts receivable secured by all of the client's assets." *Id.* One of Coral Capital's clients, Disrupt Social, is a marketing agency for direct-to-consumer brands. *Id.* ¶¶ 17–18. Disrupt Social's sole member is Evan Hart Bloomberg. *Id.* ¶ 12.

    On October 5, 2022, Disrupt Social entered into a factoring agreement with Coral Capital, under which Coral Capital agreed to purchase certain accounts arising from Disrupt Social's "sale of goods or rendition of services to . . . customers located in the United States and Canada." *Id.* ¶ 19. Under the agreement, Disrupt Social agreed to assign the payment of certain approved receivables to Coral Capital. *Id.* ¶ 35. Bloomberg acted as guarantor for the agreement. *Id.* ¶¶ 32–33. He guaranteed that each receivable "represent[ed] a bona fide sale and delivery of goods or rendition of services to Account Debtors," that all documents provided to Coral Capital were genuine, and that he would be personally liable for Disrupt Social's obligations under the agreement. *Id.* ¶¶ 32–34.

Between January and April 2024, Coral Capital purchased over $1.5 million in receivables purportedly owed to Disrupt Social from CBS Interactive for services invoiced during those same months. *Id.* ¶¶ 50–51. Coral Capital didn't receive any payment for the invoices, *id.* ¶¶ 35, 39, and Disrupt Social didn't pay the factoring fees due, *id.* ¶ 51. On April 22, 2024, Coral Capital's COO emailed Jason Rossi of CBS Interactive to ask about the status of the receivables. *Id.* ¶ 41. Rossi responded that CBS Interactive "did not do any business with Disrupt Social during December, January and February, nor [had it] received the invoices that [Coral Capital] described." *Id.* Rossi also disclosed that CBS Interactive "had some compliance issues with Disrupt Social's traffic, which caused [CBS Interactive] to pause business with [Disrupt Social] on 11/16/2023." *Id.* ¶ 42.

On May 7, 2024, Coral Capital sent a notice of default to defendants for failing to pay the factoring fees and demanding payment of the amount due under the contract. *Id.* ¶ 38. Defendants didn't pay, and on May 21, 2024, Coral Capital sued for breach of contract, fraud in the inducement, and conversion. Dkt. 1. During discovery, CBS Interactive "produced every invoice ever issued to and received by [CBS Interactive] from Disrupt Social," together with proof of payment. Dkt. 71-15 ¶ 4.[1] The "last invoice ever issued to . . . [CBS Interactive] from Disrupt Social was dated December 1, 2023, and paid on January 16, 2024"; CBS Interactive didn't receive any invoices in 2024. *Id.* ¶¶ 5, 6. CBS Interactive explained that "Disrupt Social performed no services for [CBS Interactive] from January through April 2024]," "[o]ther than . . . small test campaigns run in March 2024, for which [the parties] agreed no compensation would be made since they were tests and ran at a loss." *Id.* ¶ 6. Similarly, when Coral Capital asked defendants to produce "all invoices that either or both [d]efendants sent to [CBS Interactive] for the [a]pproved [r]eceivables," the most recent invoice to CBS Interactive was dated December 1, 2023. Dkt. 84 ¶ 42.

On December 5, 2024, Coral Capital filed a second amended complaint, which added a constructive-trust claim against Disrupt Social. Dkt. 55 ¶¶ 92–101. Defendants moved to dismiss the second amended complaint. Dkt. 63. Meanwhile, after the close of discovery, Coral Capital moved for summary judgment. Dkt. 68.

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 298–99 (2d Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim is plausible on its face 'when the plaintiff pleads factual content that

---

[1] The Court denies defendants' request to disregard the affidavit of CBS Interactive executive Mouy Tang, which provided information concerning the invoices. *See* Dkt. 78 at 23. Defendants say they have "serious concerns with the timing of the" affidavit, which was provided to defendants two days before Coral Capital's motion for summary judgment was filed, two weeks after discovery closed, and twelve days after the subpoena to CBS Interactive was executed. *Id.* But defendants fail to explain why they are prejudiced by this timing. And they don't dispute any of the facts in the Tang affidavit. In fact, defendants' production confirms that the last invoice issued by Disrupt Social to CBS Interactive was dated December 1, 2023. Dkt. 84 ¶ 42.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 299 (quoting *Iqbal*, 556 U.S. at 678). When evaluating whether a complaint clears this bar, the Court must "accept[] all factual allegations in the complaint as true[] and draw[] all reasonable inferences in the plaintiff's favor." *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

Summary judgment is appropriate only if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that 'a reasonable [factfinder] could return a verdict for the nonmoving party.'" *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006) (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party." *Id.*

## DISCUSSION

### I. Coral Capital doesn't sue the wrong entity.

Defendants' principal argument for dismissing the complaint is that Coral Capital has sued the wrong entity. The factoring agreement is between Coral Capital and Disrupt Social, LLC, a Wyoming limited liability company. Dkt. 64-2 at 2. The second amended complaint names "Disrupt Social, LLC," which it says is a "limited liability company that was organized under the laws of the State of Wyoming at the time this action was commenced," as a defendant. Dkt. 55 ¶ 7. The Wyoming LLC was "administratively dissolved on August 9, 2024." *Id.* The complaint says that "[a]s of May 22, 2024, Disrupt Social is a domestic limited liability company organized under the laws of the State of Nevada." *Id.* ¶ 8.

Defendants argue that the complaint improperly treats the Wyoming and Nevada LLCs as the same company. Defendants say that the Nevada LLC is a separate entity with no relationship to this litigation. And they point out that under Wyoming law, plaintiffs can sue administratively dissolved entities, so the Wyoming LLC's "status as an administratively dissolved corporation did *not* preclude [Coral Capital] from continuing to pursue its claims" against that entity. Dkt. 64 at 2.

The Court rejects defendants' "these aren't the droids you're looking for" argument. The complaint names Disrupt Social, LLC, as the defendant, which, according to the complaint, "is a limited liability company that was organized under the laws of the State of Wyoming at the time this action was commenced." Dkt. 55 ¶ 7. That's undisputedly the entity on the other side of the factoring agreement. As Coral Capital explains, it didn't mean to "substitute or add the Disrupt Social Nevada entity as a party to this action," but rather to "supplement[] its allegations by incorporating facts from Defendants' own Declaration and internal documents establishing they formed the Nevada entity solely to avoid paying a judgment." Dkt. 66 at 7. Coral Capital expressly disclaims any intent to proceed against the Nevada entity, conceding that it "has and always has

named and prosecuted this action against only the Wyoming entity." *Id.* at 8. Accordingly, the complaint identifies the proper defendant.

## II. The constructive-trust claim is dismissed.

Coral Capital's fifth cause of action is for "constructive trust against Disrupt Social." Dkt. 55 ¶¶ 92–101. Coral Capital says that Disrupt Social's dissolution in Wyoming and its reformation in Nevada was effectuated "in bad faith in an effort to evade judgment and prevent [Coral Capital] from collecting the debt owed to it by [d]efendants." *Id.* ¶ 99. The complaint alleges that Coral Capital is entitled to the imposition of a constructive trust on the defendants' assets "including, but not limited to, bank accounts, cash, receivables, profits, trusts, and securities . . . acquired with, enriched by, or transferred from or as a result of the dissolution of the predecessor Disrupt Social entity in Wyoming in favor of its reorganization in Nevada." *Id.* ¶ 101.

Defendants move to dismiss the constructive-trust claim on the ground that there's no fiduciary relationship between Disrupt Social and Coral Capital. They also say that the existence of a contractual agreement between the parties prevents Coral Capital from seeking a constructive trust. Coral Capital responds that fiduciary relationships are not always necessary and constructive trusts are appropriate when, as here, a business has improperly dissolved to make itself judgment proof.

The factoring agreement and guaranty provide that they are governed by New York law. *See* Dkt. 72-1 at 18; Dkt. 70-3 at 3. "Whether New York law recognizes a standalone claim for a constructive trust is an open question." *DarkPulse, Inc. v. EMA Fin., LLC*, 2023 WL 2307386, at *8 (S.D.N.Y. Mar. 1, 2023). Although the New York Court of Appeals has "referred to a request for a constructive trust as 'purportedly a cause of action,' and stated that 'a constructive trust is an equitable remedy,'" it has "recently adjudicated cases involving standalone constructive[-]trust claims without raising questions as to their viability." *Id.* (first quoting *Consumers Union of U.S., Inc. v. State*, 840 N.E.2d 68, 77 n.14 (N.Y. 2005); and then quoting *Simonds v. Simonds*, 380 N.E.2d 189, 193 (N.Y. 1978)); *see, e.g.*, *Cortland St. Recovery Corp. v. Bonderman*, 96 N.E.3d 191, 196 nn.10–11 (N.Y. 2018). Accordingly, courts in this district have split on whether to allow constructive-trust claims pled as causes of action to proceed. *See Winklevoss Cap. Fund, LLC v. Shrem*, 351 F. Supp. 3d 710, 721 (S.D.N.Y. 2019) (collecting cases). The distinction between cause of action and remedy is often "semantic," however, because "even if not permitted to plead constructive trust as a claim, 'plaintiffs may, if appropriate, later request, as a remedy, the imposition of a constructive trust.'" *Id.* (quoting *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 419–420 (S.D.N.Y. 2010)); *see also DarkPulse*, 2023 WL 2307386, at *8 ("The dismissal is largely a technicality, because Plaintiff may seek imposition of a constructive trust as an equitable remedy if Plaintiff prevails on the unjust enrichment claim.").

For a few reasons, the Court need not resolve this question. First off, a constructive trust is "an equitable remedy" that "should not be imposed unless it is demonstrated that a legal remedy is inadequate." *Bertoni v. Catucci*, 498 N.Y.S.2d 902, 905 (3d Dep't 1986). And when "a valid agreement controls the rights and obligations of the parties, an adequate remedy at law typically exists." *In re First Cent. Fin. Corp.*, 377 F.3d 209, 215 (2d Cir. 2004). Indeed, Coral Capital points

4

to no case in which a court permitted a constructive trust between parties to the contract at issue.[2] To the extent that Coral Capital seeks to impose a constructive trust against the assets of the Nevada entity, which is not a party to the contract, it can't do that without suing that entity in the first place. And as Coral Capital concedes, its suit is "against only the Wyoming entity." Dkt. 66 at 8.

Second, and relatedly, although Coral Capital is correct that courts "on occasion have not required a fiduciary relationship in order to impose a constructive trust," *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 354 (2d Cir. 1992), even "the Court of Appeals in *Koreag* did not disregard [this] factor entirely, holding that the subject of the trust, the liquidator of an insolvency estate, was 'acting in *some* fiduciary capacity toward *some* entities.'" *Staudinger+Franke GMBH v. Casey*, 2015 WL 3561409, at *13 (S.D.N.Y. June 8, 2015) (quoting *Koreag*, 961 F.2d at 354). Accordingly, "[c]ourts regularly dismiss claims for a constructive trust when addressing conventional business relationships where," like here, "nothing approaching a confidential or fiduciary relationship exists," nor are there "similar circumstances to *Koreag* that would warrant dispensing with this requirement." *Id.* at *13 (collecting cases).

### III. The motion for summary judgment isn't premature.

Coral Capital moves for summary judgment on the remaining claims. Defendants argue that this motion is premature because they haven't had a chance to answer the second amended complaint. Dkt. 78 at 8.

The Court disagrees. Federal Rule of Civil Procedure 56(b) provides that, "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Here, Coral Capital filed its motion on January 30, 2025, twenty days after discovery closed, in accordance with the case management plan proposed by the parties and approved by the Court. *See* Dkt. 36.

Although some courts in this circuit have declined to resolve summary-judgment motions filed before "the nonmovant has had time to file a responsive pleading," *Toussie v. Allstate Ins. Co.*, 213 F. Supp. 3d 444, 446 (E.D.N.Y. 2016) (citation omitted), these cases "do not support the broad proposition that summary judgment is never appropriate before an answer or responsive pleading or that defendants can delay a summary judgment motion by filing a partial motion to dismiss," *Chachkes v. David*, 2021 WL 101130, at *5 (S.D.N.Y. Jan. 12, 2021). Instead, those cases suggest that courts may decline to adjudicate a summary-judgment motion when the circumstances require it. Here, there is no "factual dispute[] or other complication[]" that justifies declining to adjudicate the motion. *See id.* (adjudicating pre-answer motion for summary judgment that "depend[ed]

---

[2] Coral Capital points to only one case, *Northern Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94 (S.D.N.Y. 2013), to support its argument that the factoring agreement doesn't bar its constructive-trust claim. In *Northern Shipping*, Coral Capital says, "there was a contractual agreement between the parties . . . and the court still held that a constructive trust was appropriate." Dkt. 66 at 10. To the contrary, the *Northern Shipping* court dismissed the constructive-trust claim because there was a valid agreement between the parties. 921 F. Supp. 2d at 107.

entirely upon construction of a single contract"). Accordingly, the Court proceeds to the merits of the summary-judgment motion.

### IV.  Summary judgment is granted on the contract claims.

"Under New York law, the elements of a breach of contract claim are '(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'" *Fuller Landau Advisory Servs. Inc. v. Gerber Fin. Inc.*, 333 F. Supp. 3d 307, 311–12 (S.D.N.Y. 2018) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004)).

Defendants fail to establish a genuine dispute of material fact as to any of these elements. Both the factoring agreement with Disrupt Social and the guaranty with Bloomberg warrant that receivables sold to Coral Capital represented "a bona fide sale and delivery of goods or rendition of services." *See* Dkt. 72-1 at 6 (factoring agreement); Dkt. 70-3 at 1 (guaranty). There's no dispute that Coral Capital performed its obligations under these agreements. Nor is there any genuine dispute that the receivables that Coral Capital purchased from Disrupt Social from January to April 2024—all from CBS Interactive—were fabricated. According to CBS Interactive's Senior Vice President of Financial Planning & Analysis, "[o]ther than . . . small test campaigns run in March 2024, for which [CBS Interactive] and Disrupt Social agreed no compensation would be made since they were tests and ran at a loss, Disrupt Social performed no services for [CBS Interactive] from January through April 2024." Dkt. 71-15 ¶ 6. Defendants don't dispute that CBS Interactive wasn't invoiced for any services that occurred in 2024; when asked during discovery to turn over all invoices issued to CBS Interactive, the most recent invoice Disrupt Social produced was dated December 1, 2023. Dkt. 84 ¶ 42. And CBS Interactive confirmed that was the last invoice it received from Disrupt Social. *See* Dkt. 71-15 ¶ 5.

Defendants say that by "purchas[ing] the subject receivables, [Coral Capital], not [d]efendants, took [on] the underlying credit risk of nonpayment." Dkt. 78 at 17. They also argue that defendants "had a good faith belief, based on [Disrupt Social's] ongoing relationship with and services for CBS Interactive, that the receivables were valid." *Id.*

These arguments are no defense to Coral Capital's contract claims. First, Coral Capital didn't take on the risk that the invoices it purchased were fake—it expressly put that risk on defendants. The factoring agreement provides that Coral Capital "shall assume the Credit Risk" for certain receivables, but it defines "credit risk" as "the relevant Account Debtor's failure to pay such Approved Receivables *solely because of such Account Debtor's financial inability to pay*." Dkt. 72-1 at 2 (emphasis added). As discussed above, defendants warranted that "each and every Approved Receivable now or hereafter sold and assigned to Purchaser . . . represents a bona fide sale and delivery of goods or rendition of services to Account Debtors." *Id.* at 6; *see also* Dkt. 70-3 at 1. "A warranty is an assurance by one party to a contract of the existence of a fact upon which the other party may rely," and "it amounts to a promise to indemnify the promisee for any loss if the fact warranted proves untrue." *Metro. Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946) (Learned Hand, J.).

6

Second, while defendants claim that they had a "good faith belief" that the receivables were valid, they don't dispute that they were in fact invalid. And that's the operative question. *See Deutsche Bank Nat'l Tr. Co. v. Quicken Loans Inc.*, 810 F.3d 861, 866 (2d Cir. 2015) ("A representation of present fact is either true or false—and the contract therefore performed or breached—if the underlying fact was true or false at the time the representation was made."). Moreover, defendants don't dispute that they breached the contract in other ways—namely, by failing to pay the factoring fees due under the contract.

As for damages, Coral Capital argues (and defendants don't dispute) that if it prevails on liability, it is entitled to expectation damages of $1,511,819.44, which represents both the amount Coral Capital advanced to Disrupt Social to purchase the fabricated receivables ($1,257,075.36) plus the unpaid fees under the contract, calculated as of October 9, 2024.[3] *See* Dkt. 70-8; *see also Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 425 (S.D.N.Y. 2004) (explaining that "[d]amages for breach of contract are limited to expectation damages—the amount necessary to put plaintiff in as good a position as if defendant had fulfilled the contract" (alteration in original) (citation omitted)). Accordingly, Coral Capital is entitled to summary judgment on its contract claims.

## V.   Summary judgment is denied on the fraud claim.

"To state a claim for fraudulent inducement under New York law, a plaintiff must show: (1) a representation of material fact, (2) which was untrue, (3) which was known to be untrue or made with reckless disregard for the truth, (4) which was offered to deceive another or induce him to act, and (5) which that other party relied on to its injury." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 580 (2d Cir. 2005).

Coral Capital first argues that defendants are liable for fraudulent inducement because they misrepresented that each approved receivable represented "a bona fide sale and delivery of goods or rendition of services to [CBS Interactive]," to "induce [Coral Capital] to contract with them and purchase the [a]pproved [r]eceivables." *See* Dkt. 69 at 16; *see also* Dkt. 72-1 at 6. "A cause of action alleging fraud does not lie where the only fraud claim relates to a breach of contract." *WIT Holding Corp. v. Klein*, 724 N.Y.S.2d 66, 67 (2d Dep't 2001); *see also Vorcom Internet Servs., Inc. v. L&H Eng'g & Design LLC*, 2013 WL 335717, at *4–5 (S.D.N.Y. Jan. 9, 2013) (dismissing fraud-in-the-inducement claim as duplicative of contract claim). Even assuming that this fraud claim isn't duplicative of its contract claim, however, Coral Capital isn't entitled to summary judgment. Defendants say that Disrupt Social's relationship with CBS Interactive was "ongoing well into 2024," given that Disrupt Social was conducting some small campaigns for CBS Interactive. Dkt. 79 ¶ 6; *see also* Dkt. 71-15 ¶ 6. Bloomberg says that he "believed that CBS Interactive was paying Disrupt Social for these services, consistent with the companies'

---

[3] In the alternative, Coral Capital suggests that the Court conduct an inquest on damages to determine the amount due under the contract through the date of judgment. Dkt. 69 at 27. Given that the parties don't contest that October 9, 2024, is an appropriate date to fix damages, however, the Court declines to conduct an inquest.

7

relationship since its inception." Dkt. 79 ¶ 6. He also points out that he didn't receive notice from CBS Interactive that it was terminating its Marketing Consultant Agreement with Disrupt Social until June 25, 2024. *See* Dkt. 80-2; Dkt. 78 at 4. So there's a genuine issue of material fact about whether defendants knew or recklessly disregarded the possibility that the invoices were fake.

Second, Coral Capital argues that Bloomberg fraudulently induced Coral Capital to enter into the factoring agreement in the first place by answering "no" to the question, "Any judgment outstanding?," when in fact Bloomberg had a $100,000 American Express judgment against him. *See* Dkt. 70-1 at 7; Dkt. 71-9. But Bloomberg insists that he didn't know about the judgment at the time he filled out the application, *see* Dkt. 79 ¶ 5, so again there's a disputed issue of material fact as to whether the misrepresentation was intentional (or made with reckless disregard for the truth). Accordingly, Coral Capital isn't entitled to summary judgment on its fraud claim.

## VI. Summary judgment is denied on the conversion claim.

Under New York law, "[t]o maintain a claim for conversion, a plaintiff must show: (1) the property subject to conversion is 'a specific identifiable thing;' (2) plaintiff had 'ownership, possession or control' over the property before its conversion; and (3) defendant 'exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (citation omitted).

Coral Capital argues that defendants are liable for conversion because they didn't return the money that Coral Capital paid for the fabricated receivables and because those funds were improperly used for Bloomberg's personal expenses, rather than as working capital for the LLC as required by the factoring agreement. *See* Dkt. 81 at 9. But it's not clear how this is distinct from Coral Capital's contract claim, and "an action for conversion cannot be validly maintained 'where damages are merely being sought for breach of contract.'" *Moses*, 360 F. Supp. 2d at 541 (citation omitted). "Rather, a plaintiff must show acts that were unlawful or wrongful as opposed to mere violations of contractual rights." *Id.*; *see also AD Rendon Commc'ns, Inc. v. Lumina Ams., Inc.*, 2006 WL 1593884, at *2 (S.D.N.Y. June 7, 2006) ("For a conversion claim to succeed in the context of a dispute regarding a contract, the breach of contract must result in some 'wrong' that is separately actionable." (citation omitted)). Coral Capital doesn't say what separate wrong its conversion claim addresses or what separate damages accrued. Accordingly, it isn't entitled to summary judgment on this count.

## VII. Defendants' affirmative defenses to the contract claims are waived.

Coral Capital argues that it is entitled to summary judgment on the affirmative defenses raised in defendants' answer to the first amended complaint. Defendants say that Coral Capital can't seek dismissal of defenses that haven't been pled in response to the second amended complaint. The Court agrees that summary judgment is premature on defenses not raised in response to the operative complaint.

8

However, despite urging the Court to defer ruling on Coral Capital's summary-judgment motion, defendants were on notice that the Court might decide the merits of this case. Instead of arguing that summary judgment was improper based on any affirmative defense, defendants spent most of their opposition rehashing arguments already made in their motion to dismiss. Accordingly, given the well-settled principle that affirmative defenses not raised in summary-judgment-opposition briefing are waived, the Court holds that defendants have waived any defense to Coral Capital's contract claims. *See EMA Fin. v. TPT Glob. Tech, Inc.*, 2023 WL 7043227, at *9 (S.D.N.Y. Oct. 26, 2023) ("Defendant raised at least eight affirmative defenses in its Answer but waived several of them by failing to raise them in opposition to Plaintiff's motion for summary judgment."); *see also Triodetic Inc. v. Statue of Liberty IV, LLC*, 582 F. App'x 39, 40 (2d Cir. 2014) ("[P]laintiff never raised these arguments in its opposition to defendants' motion for summary judgment. Accordingly, these arguments were waived.").

### VIII. Sanctions are denied.

Coral Capital moves for sanctions under Federal Rule of Civil Procedure 37, arguing that defendants should suffer consequences for failing to turn over documents that Coral Capital requested at Bloomberg's deposition. These documents, say Coral Capital, "were critical discovery that [it] would otherwise have used in the instant motion for summary judgment." Dkt. 69 at 26. Despite requesting these documents four times via email, defendants never turned them over. Coral Capital never filed a motion to compel.

As defendants point out, Coral Capital's argument is puzzling given its position that it has all the evidence it needs for summary judgment. In any event, Coral Capital correctly notes that "[t]he two predicates to the imposition of sanctions under Rule 37(b) are (1) a 'court order directing compliance with discovery requests,' and (2) 'non-compliance with that order[.]'" *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 673 F. Supp. 3d 345, 356 (S.D.N.Y. 2023) (second alteration in original) (citation omitted). Because Coral Capital doesn't identify a court order that defendants failed to comply with, its request for sanctions is denied.

### IX. Coral Capital is entitled to prejudgment interest and attorneys' fees.

Coral Capital argues that if it prevails on its contract claims, it is entitled to attorneys' fees under the factoring agreement and guaranty. The Court agrees. The factoring agreement provides that Disrupt Social "shall pay . . . all costs, expenses and liabilities incurred[] in connection with" the "enforcement of" the agreement, including "reasonable attorneys' fees." Dkt. 72-1 at 13. The guaranty provides that "[i]n the event of any breach of the warranties, representations and covenants herein," Bloomberg will be liable to Coral Capital for "any loss or damage" and "for costs, expenses and reasonable attorneys' fees incurred by" Coral Capital. Dkt. 70-3 at 2. Consistent with these agreements, defendants don't dispute that Coral Capital is entitled to attorneys' fees, should it prevail on its contract claims.

Coral Capital also says that it's entitled to prejudgment interest on its damages award. Defendants again don't contest this point. Nor could they—the agreements provide that New York

law governs, *see* Dkt. 72-1 at 18; Dkt. 70-3 at 3, and under New York law, "a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right." *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991).

## CONCLUSION

For these reasons, defendants' motion to dismiss is GRANTED IN PART. Count five of the second amended complaint is dismissed, but counts one through four survive. Coral Capital's motion for summary judgment is also GRANTED IN PART. Summary judgment is granted on counts one and two but denied on counts three and four. By May 30, 2025, the parties should meet and confer **in person** with clients present and if the parties cannot resolve this case, they should submit a **joint** letter by June 6, 2025, proposing next steps.

The Clerk of Court is directed to terminate Dkts. 63 and 68.

SO ORDERED.

Dated: May 16, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge